DECISION
Before this Court is the motion of Giacomo Romano (Plaintiff) for a new trial and/or an additur after a jury verdict in his favor in his negligence action against Nancy M. Guzman (Defendant). As grounds for his new trial motion, Plaintiff asserts that jury improperly relied upon impeached expert opinion testimony. In support of his motion for an additur, Plaintiff contends that the damages award is inadequate in light of the testimonial and documentary evidence presented at trial. Jurisdiction is pursuant to Super. R. Civ. P. 59.
 Facts and Travel
On January 11, 2002, Defendant collided with the rear portion of Plaintiff's vehicle on Smithfield Avenue in Pawtucket. Plaintiff sought treatment for neck pain at the walk-in emergency room at the Pawtucket Health Care Facility. Later, he was referred to orthopedic surgeon Robert J. Fortuna, M.D.
On January 22, 2002, Plaintiff met with Dr. Fortuna and complained of neck pain that radiated into his arms, as well numbness in his thumbs. Plaintiff also told Dr. Fortuna that he previously had suffered from lower back pain as the result of another automobile collision, that he had a past medical history of generalized arthritis in his back and knees, and that he suffered from hypertension. *Page 2 
On May 23, 2002, Plaintiff underwent an electromyogram (EMG) evaluation of his arms and hands in order to determine whether nerve compression was causing the numbness in his hands. The EMG revealed that Plaintiff was suffering from acute, bilateral carpal tunnel syndrome (CTS).
On February 4, 2004, Plaintiff filed this negligence action against Defendant for personal injuries. During the subsequent trial, defendant conceded liability, and a trial on damages continued. Plaintiff contended that the collision caused him to suffer a neck injury and CTS, and presented experts in support of his injuries.
The cause of the neck injury essentially was undisputed. However, Defendant vigorously disputed that the collision caused Plaintiff's CTS, presenting her own expert on this issue. The jury later returned a verdict in favor of Plaintiff, finding that the collision had caused injuries to Plaintiff, and it assessed damages in the amount of $ 8300. Plaintiff then filed this timely motion seeking a new trial on the issue of damages or, in the alternative, an additur.
 Standard of Review
Rule 59 of the Superior Court Rules of Civil Procedure governs the granting of a new trial. It provides in pertinent part:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state." Sup. Ct. R. Civ. P. 59(a).
When ruling on a motion for a new trial, the trial justice functions as a "superjuror." Candido v. University of Rhode Island, 880 A.2d 853, 856
(R.I. 2005). In doing so, the trial justice
 "considers the pros and cons of such a motion . . . [and] makes an independent appraisal of the evidence in the light of his [or her] charge to the jury. He [or she] can weigh the evidence and assess *Page 3 
the witnesses' credibility. He [or she] can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record. After he [or she] finishes his [or her] sifting of the evidence, the trial justice must make a choice. He [or she] can . . . follow the route designed for times when he [or she] thinks the testimony so evenly balanced that the verdict should not be disturbed, or he [or she] can go the way established for those occasions when his [or her] `superior judgment' tells him [or her] that the verdict is against the preponderance of the evidence and thereby fails to either do justice to the parties or respond to the merits of the controversy. If he [or she] determines that the evidence presented an `evenly balanced-reasonable minds could differ' situation, he [or she] denies the motion. On the other hand, if he [or she] is of the opinion that the verdict is not a proper response to the evidence, he [or she] grants the motion." Bajakian v. Erinakes, 880 A.2d 843, 851(R.I. 2005) (quoting Ruggieri v. Big G Supermarkets, Inc., 114 R.I. 211, 215-16, 330 A.2d 810, 812 (1975)).
A trial justice should set aside a verdict only "when in his or her judgment it is clearly wrong because it fails to respond truly to the merits of the controversy, fails to administer substantial justice, and is against the fair weight of the evidence." Pitocco v. Harrington,707 A.2d 692, 697-98 (R.I. 1998). Furthermore, while the trial justice "need not perform an exhaustive analysis of the evidence, he or she should refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed." Reccko v. Criss Cadillac Co., Inc., 610 A.2d 542,545 (R.I. 1992) (citing Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)).
 Review of the Evidence
Plaintiff contends that the verdict was contrary to the law and the manifest weight of the evidence. He further asserts that the award is so inadequate that it shocks the conscience of the Court and does not do substantial justice between the parties.
It is well-settled that when there is a motion for a new trial on the inadequacy of the damages "it is the duty of the trial justice to exercise his [or her] independent judgment on all the *Page 4 
evidence material to the question of damages in the light of his [or her] charge to the jury, to weigh such evidence and to pass on the credibility of the witnesses." Cicilline v. Ford Motor Credit Co.,751 A.2d 1278, 1279-80 (R.I. 2000) (quoting Fitzgerald v. Rendene,98 R.I. 239, 240, 201 A.2d 137, 138 (1964)). After so doing, "the trial justice is in a position to determine whether there was such a demonstrable disparity between the awards and the damages sustained as a consequence of the injury as to make the verdicts grossly inadequate."Cicilline, 751 A.2d at 1280. If the verdicts are grossly inadequate, then "substantial justice between the parties would not be achieved and the verdicts would not respond truly to the real merits of the controversies on the evidence submitted." Id. However, where "the evidence is evenly balanced so that reasonable people could arrive at different results, the trial justice must deny the motion."Id. (quoting Carlin v. Parkview Service Co., 625 A.2d 212, 212 (R.I. 1993)).
Plaintiff asserts that undisputed medical affidavits demonstrated that his medical expenses amounted to $ 13,485.16. He further contends that Defendant's expert ignored certain documentation to improperly conclude that Plaintiff's CTS was not caused by the collision. Defendant counters that there was sufficient evidence in the record for the jury to reasonably conclude that the CTS was unrelated to the collision, and that it was entitled to discount any or all of the medical expenses connected to the treatment of that condition.
Observing that Plaintiff was an engaging and charming witness who sincerely believed that his CTS manifested itself right after the collision, the jury reasonably could have come to the opposite conclusion based upon the expert witness testimony presented at trial. During the trial, Plaintiff presented two experts: orthopedic surgeon Fortuna, M.D., and trauma, vascular and general surgeon Norberg Fleisig, M.D. Both testified that Plaintiff's CTS was caused by the collision. However, both doctors also admitted that for the collision to have caused the CTS, *Page 5 
Plaintiff would have had to suffer the type of pain, swelling and restricted range of motion associated with wrist strain, and Plaintiff never exhibited any such symptoms.
Hand and orthopedic surgeon Gregory J. Austin, M.D. testified as an expert on behalf of Defendant. In his opinion, the collision did not cause Plaintiff's CTS. Like Plaintiff's experts, Dr. Austin also testified that acute CTS must be caused by an injury, and that no injury was evident in this case. Although Plaintiff challenges the credibility of Defendant's expert witness, and contends that his expert opinion was based upon improper documentation, it is well settled that "a jury is free to accept or to reject expert testimony in whole or in part or to accord it what probative value the jury deems appropriate." Owens v.Silvia, 838 A.2d 881, 890 (R.I. 2003) (quoting Morra v. Harrop,791 A.2d 472, 477 (R.I. 2002)); see also Vicario v. Vicario, 901 A.2d 603, 609
(R.I. 2006) ("It is the duty of the triers of fact to examine and consider the testimony of every witness regardless of his qualifications, and to grant to particular testimony only such weight as the evidence considered as a whole and the proper inferences therefrom reasonably warrant.")
During cross examination, plaintiff's counsel attempted to impeach and discredit Dr. Austin's testimony on the basis that he failed to fully review various medical documents before forming his expert opinion. However, even Plaintiff's own experts conceded that that Plaintiff did not exhibit symptoms of the type of wrist strain associated with collision-caused CTS. As a result, the jury reasonably could have concluded that the collision did not cause Plaintiff's CTS, and that Dr. Austin's alleged failure to review certain documents had little or no effect on the outcome of his ultimate opinion.
As reasonable minds could differ concerning the various expert opinions, this Court concludes that the jury verdict was not clearly wrong, did not fail to respond truly to the merits *Page 6 
of the controversy, did not fail to administer substantial justice, and was not against the fair weight of the evidence. Consequently, Plaintiff's motion for a new trial on damages is denied.
Plaintiff also moves the Court for an additur, asserting that the amount of the verdict is against the weight of the evidence and should be amended by the Court. He contends that the award fails to fully reimburse him for his medical expenses, much less compensate him for pain and suffering.
Similar to new trial motions, "[m]otions for an additur . . . are to be assayed by trial justices from their perspective as a superjuror."Silva v. Spooner, 692 A.2d 336, 336 (R.I. 1997) (mem.) (citingHayhurst v. LaFlamme, 441 A.2d 544, 547 (R.I. 1982)). A trial justice may cast aside a jury's damage award "only if the award shocks the conscience, strongly suggests that it was affected by prejudice or passion, or demonstrates that the jury calculated the amount of the award upon some clearly erroneous basis." Id. The purpose of remittiturs and additurs is "to avoid the costs and delays that arise from relitigation of the same issues, while providing a just result for the litigants." Lennon v. Dacomed Corp., 901 A.2d 582, 590 (R.I. 2006).
It is undisputed that Plaintiff incurred $ 13,485.16 in medical expenses, but that the jury awarded him $ 8300 in damages; however, of those medical expenses, approximately $ 9500 was attributable to Plaintiff's CTS. Considering that the jury rejected Plaintiff's allegation that the collision caused his CTS, it reasonably could have subtracted any medical expenses related to that condition and then awarded the approximately $ 3500 remainder for direct medical expenses. Viewed in this light, the $ 8300 award does not warrant the granting of an additur because the verdict was responsive to the merits of the case and the evidence presented, and it does substantive justice to the parties. *Page 7 
 Conclusion
Accordingly, and for the foregoing reasons, Plaintiff's motion for a new trial and/or an additur is denied. Counsel shall submit a proposed judgment for entry.